IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

<table>
<tr><td>

Philadelphia Indemnity Insurance Company,

                Plaintiff,

v.

Richard Alexander Murdaugh, Richard Alexander Murdaugh, Jr. and Renee S. Beach, as Personal Representative of the Estate of Mallory Beach,

                Defendants.

</td><td>

Civil Action No.: 9:19-cv-02782-SAL

<br><br>

**DEFENDANTS RICHARD ALEXANDER MURDAUGH AND RICHARD ALEXANDER MURDAUGH, JR.'S MEMORANDUM IN SUPPORT OF THEIR MOTION <u>FOR SUMMARY JUDGMENT</u>**

</td></tr>
</table>

## I.    FACTUAL BACKGROUND

The present action is a declaratory judgment action filed by plaintiff Philadelphia Indemnity Insurance Company ("Philadelphia") with regards to Philadelphia's coverage obligations in an underlying lawsuit captioned *Renee S. Beach, as Personal Representative of the Estate of Mallory Beach v. Gregory M. Parker, Inc. a/k/a Parker's Corporation d/b/a Parkers 5, Richard Alexander Murdaugh, and Richard Alexander Murdaugh, Jr.* ("underlying lawsuit") (2019-CP-25-00111), which is currently pending in the Court of Common Pleas for Hampton County, South Carolina.

According to the Amended Complaint filed in the underlying lawsuit, the claims in that suit arise out of a boat accident that occurred on February 23, 2019. <u>See Exhibit 1 (Amended Complaint in Underlying Lawsuit).</u>  The Amended Complaint states that certain minors consumed alcohol on that date, and at least one of the minors was operating a boat with several passengers in Archer's Creek[1] when the boat collided with a bridge.  The Amended Complaint

---

[1]  Archer's Creek is located in Beaufort County, South Carolina.

alleges Mallory Beach was consequently ejected from the boat and suffered catastrophic injuries that led to her death.

The only causes of action within the underlying Amended Complaint are negligence claims against each defendant. Renee S. Beach, as Personal Representative of the Estate of Mallory Beach ("underlying plaintiff") contends Defendant Richard Alexander Murdaugh ("Murdaugh"), was negligent in purportedly allowing his minor son to use Richard Alexander Murdaugh, Jr.'s ("Murdaugh, Jr.") driver's license to purchase and consume alcohol. Underlying lawsuit also alleges Murdaugh "fail[ed] to supervise his son when he knew or should have known that the minor was using another's license to purchase and consume alcohol . . . ." Additionally, underlying plaintiff contends Murdaugh, Jr. was negligent, as he allegedly provided his minor brother with his driver's license for the purpose of purchasing and consuming alcohol by minors, and purportedly allowed his brother to do so.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). When evaluating a motion for summary judgment the court must view the evidence in the light most favorable to the nonmoving party, and draw all reasonable inferences in its favor. *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 283 (4th Cir. 2004) (*en banc*). Initially, the moving party has the burden of identifying evidence which it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists when "the evidence . . . create[s] [a] fair doubt." *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985). The issue at hand is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided

that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  In this case, the Court should grant Defendants' Motion for Summary Judgment.

## III.    APPLICABLE LAW REGARDING INSURANCE

South Carolina law, in line with virtually all jurisdictions, provides that the duty to defend is broad, and arises whenever there is potential or possible obligation to indemnify the insured based on the facts appearing at the outset of the case.  Thus, the duty to defend analysis necessitates looking to the allegations of the complaint to determine whether a suit has triggered the insurer's duty to defend.  *R.A. Earhardt Textile Machinery Division, Inc., v. South Carolina Insurance Co.*, 282 S.E.2d 856, 857 (S.C. 1981).  If the underlying complaint creates even the possibility of coverage under the insurance policy, the insurer is obligated to defend its insured. *Isle of Palms Pest Control Co. v. Monticello Insurance Co.*, 459 S.E.2d 318 (S.C. Ct. App. 1995).

An insurer's duty to defend is separate and distinct from its obligation to pay a judgment rendered against an insured.  While the duty to defend is based on the allegations in the underlying complaint, the "duty to indemnify is based on evidence found by the factfinder." *Union Ins. Co. v. Soleil Group, Inc.*, 465 F. Supp. 2d 567 (citing *Ellett Bros. Inc. v. U.S. Fid & Fuar. Co.*, 275 F.3d 384, 388 (4th Cir. 2001) (applying South Carolina law)).  "Generally, whether an insurer has a duty to indemnify the insured for a particular liability is only ripe for consideration, for purposes of declaratory judgment actions, if findings of fact have been made in the underlying lawsuit."  *Darwin Nat'l Assurance Co. v. Matthews & Megna LLC*, 36 F. Supp. 3d 636, 656 (D.S.C. 2014).

## IV.    PHILADELPHIA'S POLICIES

Philadelphia Indemnity Insurance Company provided policy number PHPK1926389 ("the Commercial Lines Policy", hereinafter the "CL Policy") to R. Alexander Murdaugh for the policy period of January 6, 2019 to January 6, 2020.  Attached as Exhibit 2.  The CL Policy

contains a policy form titled "Common Policy Declarations," which states "Business Description: Guides and Outfitters."  That policy also contains a "Limitation of Coverage to Designated Activities" endorsement, which states "Activities: Private Hunting Operations."  That endorsement provides "This insurance applies only to 'bodily injury,' 'property damage,' 'personal and advertising injury,' and medical expenses arising out of the Activities listed in the above SCHEDULE."

Philadelphia also issued policy number PHUB660797 ("the Umbrella Policy") to named insured "R. Alexander Murdaugh" for the policy period of January 6, 2019 to January 6, 2020, with an "Each Occurrence Limit (Liability Coverage)" of $5,000,000.  Attached as Exhibit 3. The Umbrella Policy form titled "Commercial Umbrella Liability Insurance Policy Declarations" states "Form of Business: Individual:" and "Business Description: Guides & Outfitters Umbrella."  The Umbrella Policy also states the following, in pertinent part:

> **SECTION I – COVERAGES**
>
> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
> **COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**
>
> > **1.    Insuring Agreement**
> >
> > > We will pay on behalf of the insured the "ultimate net loss" in excess of the "applicable underlying limit," whether or not collectible, which the insured becomes legally obligated to pay as damages because of "bodily injury," "property damage" or "personal and advertising injury" to which this insurance applies.
>
> **Bodily Injury and Property Damage**
>
> a.    This insurance applies to "bodily injury" or "property damage" only if:
>
> > (1)    The "bodily injury" or "property damage" arising out of an "occurrence" takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; . . .

. . .

### SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

    **a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**3.** Each of the following is also an insured:

    **f.** Any other person or organization insured under any policy of the "underlying insurance." This grant is subject to all the limitations upon coverage under such policy other than the limits of the "underlying insurers" liability.

Notably, the Umbrella Policy does not contain a Limitation of Coverage to Designated Activities endorsement, and there is no mention of "private hunting operations" in the Umbrella Policy.

### V. ANALYSIS

#### A. Murdaugh and Murdaugh, Jr. are "Insureds"

##### 1. Murdaugh and Murdaugh, Jr. are Insureds Under an "Underlying Insurance" Policy, and are therefore Insureds Under the Umbrella Policy

The "Who Is An Insured" section of the Umbrella policy provides that an "insured" includes "Any other person or organization insured under any policy of the 'underlying insurance.'" There is in fact an "underlying insurance" policy, and Defendants are insureds under that underlying policy.

The Umbrella Policy defines "underlying insurance" to mean "any policies of insurance listed in the Declarations under the Schedule of Underlying Insurance and includes: a. Any renewal or replacement of such policies; and b. *Any other insurance available to the insured*." (emphasis added). Additionally, the Policy defines "underlying insurer" to mean "any insurer

which provides any policy of insurance listed in the Schedule of Underlying Insurance *or any other insurance available to the insured*." (emphasis added). As such, the underlying policy need not be listed on the Schedule of Underlying Insurance in order to constitute "underlying insurance" under the Umbrella Policy's terms. *See BITCO Gen. Ins. Corp. v. J. Burns Brown Operating Co*., No. CV 18-87-GF-BMM-JTJ, 2020 U.S. Dist. LEXIS 80035, at \*6 (D. Mont. May 6, 2020) (noting an Umbrella Policy defined "underlying insurance" in two separate ways: the first being that "underlying insurance" constituted all coverage "afforded under insurance policies designated in the schedule of 'underlying insurance' on the Declarations Page of [the Umbrella Policy]," and the second being "any other insurance available to the insured."); *Markel Am. Ins. Co. v. Travelers Cas. & Sur. Co*., No. 1:08-cv-1282-RLY-DML, 2010 U.S. Dist. LEXIS 68179, at \*17 (S.D. Ind. July 7, 2010) (where the underlying policy at issue was not listed on an umbrella policy's Schedule of Underlying Insurance, the umbrella policy still provided coverage because it agreed to provide coverage for losses that exceeded the limits of "any other insurance available to the insured"); *Comm'rs of the State Ins. Fund v. Aetna Cas. & Sur. Co*., 283 A.D.2d 335, 335-36, 728 N.Y.S.2d 6, 7 (App. Div. 2001) ("Although the State Insurance Fund is not listed in the umbrella policy's schedule of underlying insurance, it comes within the policy's definition of 'underlying insurance,' because this term is defined in the policy to encompass both the policies listed in the schedule of underlying insurance and '[a]ny other insurance available to the insured.'" (alteration in original)); *Peerless Ins. Co. v. M.A.S.S. Servs*., No. 8:06-cv-250-T-27TGW, 2007 U.S. Dist. LEXIS 74629, at \*43 (M.D. Fla. Oct. 5, 2007) ("Based on the plain language of the definition of 'Underlying Insurance,' the Auto-Owners policy constitutes 'underlying insurance.' The policy expressly defines underlying insurance as 'any other insurance available to the insured' in addition to those listed in the Schedule of Underlying Insurance. There is no provision specifying that the policies of non-affiliated companies, such as Auto-Owners, cannot constitute underlying insurance. More importantly, there is no provision in

the Policy requiring that underlying insurance be added to the Schedule of Underlying Insurance. Therefore, it is irrelevant whether the Auto-Owners policy was added to the Schedule of Underlying Insurance, in assessing coverage under the plain terms of the Umbrella Policy." (internal citations omitted)).

Progressive Northern Insurance Company policy number 85003211 afforded insurance coverage for the watercraft, a 2006 Sea Hunt 175 Escape, involved in the February 23, 2019 accident. See Exhibit 4 and attachment (Affidavit of Richard Alexander Murdaugh and Exhibit A to that affidavit- the Progressive Policy). The watercraft is listed on the Progressive policy's declarations page, Murdaugh is the named insured on the Progressive policy, and Murdaugh, Jr. also constitutes an insured under that policy. The Progressive policy states the following, in pertinent part:

### SOUTH CAROLINA BOAT AND PERSONAL WATERCRAFT POLICY

### INSURING AGREEMENT

In return for **your** payment of the premium, **we** agree to insure **you** subject to all the terms, conditions, and limitations of this policy. We will insure you for the coverages and the limits of liability shown on the policy's **declarations page**. . . .

### PARTY I – LIABILITY TO OTHERS

**INSURING AGREEMENT**

If **you** pay the premium for this coverage, we will pay damages for **bodily injury** and **property damage** for which an **insured person** becomes legally responsible because of an accident.

. . .

**ADDITIONAL DEFINITION**

When used in this Part I:
**"Insured person"** means:

7

a.  **you** or a **relative** with respect to an accident arising out of the ownership, maintenance, or use of a **watercraft** or **trailer**;

b.  any person with respect to an accident arising out of that person's use of a **covered watercraft** or **trailer** with the permission of **you** or a **relative**;

c.  any person or organization with respect only to vicarious liability for the acts or omissions of a person described in a. or b. above.

d.  Any Additional Interest Insured shown on the **declarations page** with respect only to its liability for the acts or omissions of a person described in a. or b. above.

The Progressive policy defines "covered watercraft" to include "any watercraft shown on the declarations page for the coverages applicable to that watercraft," and the watercraft involved in the February 23, 2019 accident is shown on the declarations page for "Liability To Others" coverage. Murdaugh and Murdaugh Jr. are "insured persons" within the meaning of the Progressive policy, and they are afforded coverage pursuant to that policy. Progressive is providing a defense to Defendants in the underlying lawsuit. See Exhibit 4 (Affidavit of Richard Alexander Murdaugh).[2] Therefore, regardless of whether or not Philadelphia's Commercial Lines Policy ("CL Policy") affords coverage, there is another "underlying policy" under which Defendants are insureds.

As such, Defendants are insureds under the Umbrella Policy. The Umbrella Policy provides that Philadelphia "will pay on behalf of the insured the 'ultimate net loss' in excess of the 'applicable underlying limit,' whether or not collectible, which the insured becomes legally obligated to pay as damages because of 'bodily injury,' 'property damage' or 'personal and advertising injury' to which this insurance applies'." The Umbrella Policy goes on to state under its Bodily Injury and Property Damage coverage that "[t]his insurance applies to 'bodily injury'

---

[2] In fact, Philadelphia even notes in its own Memorandum in Support of Its Motion for Summary Judgment that "Progressive Northern Insurance Company has been defending the Murdaughs in the Beach lawsuit." See Philadelphia's Motion for Summary Judgment page 2 footnote 2.

or 'property damage' only if: (1) The 'bodily injury' or 'property damage' arising out of an 'occurrence' takes place in the 'coverage territory'; (2) The 'bodily injury' or 'property damage' occurs during the policy period; . . ." The Umbrella Policy defines "Coverage Territory" to mean" "The United States of America (including its territories and possessions), Puerto Rico and Canada . . . ," and the subject accident occurred in Beaufort County, South Carolina. Furthermore, the subject accident occurred on February 23, 2019, which falls within the policy period. Finally, as explained later in this memorandum, the allegations of the Complaint clearly constitute an "occurrence" under the Umbrella Policy. As such, the Umbrella Policy affords coverage to Defendants in the underlying lawsuit.

The Umbrella Policy does contain the following endorsement:

### GENERAL LIABILITY FOLLOW FORM ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY INSURANCE POLICY

This policy is intended to include Commercial General Liability Coverage.

The Commercial General Liability insurance provided will follow the same provisions, exclusions and limitations that are contained in the *applicable* "underlying insurance" shown in the Schedule of Underlying Insurance *unless otherwise directed by this policy*, or an endorsement to this policy.

*To the extent that such provisions differ or conflict, the provisions of this policy will apply.* However, the coverage provided under this policy will not be broader than that provided by *the applicable "underlying insurance."*

(emphasis added). Philadelphia has contended in its own Motion for Summary Judgment and accompanying memorandum that, by virtue of this endorsement, the CL Policy's activities endorsement is incorporated into the Umbrella Policy, which does not contain such an endorsement. That endorsement in the CL Policy states "Activities: Private Hunting

Operations," and provides "This insurance applies only to 'bodily injury,' 'property damage,' 'personal and advertising injury,' and medical expenses arising out of the Activities listed in the above SCHEDULE." Philadelphia's argument is erroneously based upon the premise that the CL Policy is the only possible applicable "underlying policy" for which the Umbrella Policy would provide excess coverage.[3] The Umbrella Policy explicitly defines "underlying insurance" to include "Any other insurance available to the insured." Additionally, the Policy defines "underlying insurer" to mean "any insurer which provides . . . any other insurance available to the insured." As such, the underlying policy need not be listed on the Schedule of Underlying Insurance in order to constitute "underlying insurance" under the Umbrella Policy's terms. The Progressive Northern Insurance Policy issued to Defendant Murdaugh to cover the involved watercraft clearly constitutes "underlying insurance," regardless of whether the CL Policy would also constitute applicable "underlying insurance." The Umbrella Policy states that, in granting coverage to a person or organization insured under any policy of the "underlying insurance," "[t]his grant is subject to all the limitations upon coverage *under such policy* other than the limits of the 'underlying insurers' liability.'" [4]    (emphasis added). Therefore, the CL Policy's

---

[3]   Under the reasoning espoused by Philadelphia in its Motion for Summary Judgment and accompanying memorandum, if multiple policies were listed under the Umbrella Policy's "Schedule of Underlying Insurance," then the provisions, exclusions and limitations of *all* of those policies would somehow simultaneously apply to the Umbrella Policy in every instance, regardless of which particular policy was the applicable "underlying policy." This would clearly be an absurd result, as various exclusions in one listed policy could easily exclude coverage that is explicitly provided in another listed policy. Clearly, the only logical reading of the General Liability Follow Form Endorsement is that the provisions, exclusions and limitations of an "underlying policy" apply when that policy is, in fact, the *applicable "underlying policy."* Indeed, that is exactly what the endorsement states.

[4]   The Umbrella Policy's Insuring Agreement states "We will pay on behalf of the insured the 'ultimate net loss' in excess of the 'applicable underlying limit,' whether or not collectible, which the insured becomes legally obligated to pay as damages because of 'bodily injury,' 'property damage' or 'personal and advertising injury' to which this insurance applies." The Umbrella Policy defines "ultimate net loss" to mean 'the total sum, after reduction for recoveries or salvages collectible, that the insured becomes legally obligated to pay as damages by reason of settlement or judgments or any arbitration or other alternate dispute method entered into with our

Limitation of Coverage to Designed Activities endorsement, which is not included in the

Umbrella Policy, has no application when the applicable "underlying policy" is the Progressive

policy.[5]

### 2. Philadelphia's Position on Coverage Would Render the CL and Umbrella Policies Illusory

In addition to contravening the Umbrella Policy's terms, Philadelphia's position on

coverage, which is set forth in Philadelphia's Motion for Summary Judgment and accompanying

---

consent or the 'underlying insurer's' consent." The policy defines "applicable underlying limit" to mean:

a. If the policies of "underlying insurance" apply to the "occurrence" or offense, the greater of:

(1) The amount of insurance stated in the policies of "underlying insurance" in the Declarations or any other available insurance less the amount by which any aggregate limit so stated has been reduced solely due to payment of claims; or

(2) The "retained limit" shown in the Declarations; or

b. If the policies of "underlying insurance" do not apply to the "occurrence" or offense, the amount stated in the Declarations as the "retained limit."

The Umbrella Policy's declarations page states a "Retained Limit" of "$10,000."

The Progressive Northern Insurance Policy provides a combined single limit for each accident of Five Hundred Thousand and no/100 Dollars ($500,000.00) in "Liability to Others" coverage for "Bodily Injury and Property Damage." The underlying lawsuit stems from the death of Mallory Beach and seeks "actual and punitive damages, costs, and attorney's fees," and does not limit underlying plaintiff's claimed damages to the limits of the Progressive Northern Insurance Policy. As such, the Umbrella Policy affords insurance coverage to Defendant Murdaugh and Defendant Murdaugh, Jr., and Philadelphia has agreed to pay the ultimate net loss in excess of the Progressive policy's $500,000 limit.

[5] We further note that, to the extent any of the policy language at issue is ambiguous, such ambiguity is to be strictly construed against the insurer and in favor of coverage. *See Diamond State Ins. Co. v. Homestead Indus.*, 318 S.C. 231, 236, 456 S.E.2d 912, 915 (1995) ("Ambiguous or conflicting terms in an insurance policy must be construed liberally in favor of the insured and strictly against the insurer."); *W. N. Leslie, Inc. v. Travelers Ins. Co.*, 264 S.C. 408, 413, 215 S.E.2d 448, 450 (1975) ("The policy must, of course, be liberally construed in favor of the insured, with any ambiguity therein being resolved in favor of coverage.").

memorandum, would render both the CL and Umbrella Policies illusory. *See Weeks & Irvine LLC v. Associated Indus. Ins. Co.*, 433 F. Supp. 3d 791, 802 (D.S.C. 2020) ("South Carolina recognizes the illusory coverage doctrine to protect insureds where the terms of the policy exclude from coverage the very risk contemplated by the parties, rendering a policy provision virtually meaningless." (internal citation omitted)). "The doctrine applies where the language of the policy negate[s] virtually all coverage for the insured, and the insurance contract, read literally, is a delusion to the insured. *Taylor v. Sec. Nat'l Ins. Co.*, Civil Action No. 6:17-cv-2379-DCC, 2018 U.S. Dist. LEXIS 37863, at *11 (D.S.C. Mar. 8, 2018) (internal citations and quotation marks omitted). In other words, the doctrine applies when exclusions "in effect allow the insurer to receive premiums when realistically it is not incurring any risk of liability." *Id.* at *11 (quoting *Colorado Intergovernmental Risk Sharing Agency v. Northfield Ins. Co.*, 207 P.3d 839, 843 (Colo. App. 2008)). "[T]he literal interpretation of policy language will be rejected where its application would lead to unreasonable results and the definitions as written would be so narrow as to make coverage merely illusory." *S.C. Farm Bureau Mut. Ins. Co. v. Kennedy*, 398 S.C. 604, 615, 730 S.E.2d 862, 867 (2012) (internal citations and quotation marks omitted). "The illusory coverage doctrine . . . operates to qualify the general rule that courts will enforce an insurance contract as written." *Jostens, Inc. v. Northfield Ins. Co.*, 527 N.W.2d 116, 118 (Minn. Ct. App. 1995).

Defendant Murdaugh has provided an affidavit which states he obtained the CL and Umbrella Policies and has paid the premiums associated with the policies. Murdaugh also states he and his immediate family have never operated a Guides & Outfitters Operation or Private Hunting Operations as a business. As such, Murdaugh states he did not and would not have sought policies that provided coverage for such a business, as he and his family were never engaged in that type of business. Additionally, he states he is not and was not the sole owner of

any business, and therefore did not and would not have sought any insurance policy under which coverage would only apply to "the conduct of a business of which you are the sole owner."

As such, Philadelphia's argument attempts to render the CL and Umbrella Policies illusory. If Philadelphia's position were to be adhered to, Defendants would never be afforded coverage in any circumstance; therefore, Philadelphia would have been collecting premiums from Defendant Murdaugh without realistically incurring any risk of liability. *See Taylor* at \*11; *Great N. Ins. Co. v. Greenwich Ins. Co.*, No. 05-635, 2008 U.S. Dist. LEXIS 39567, at \*16 (W.D. Pa. May 12, 2008) ("A plaintiff relying on the illusory coverage doctrine can prevail by showing that the likelihood of coverage is "sufficiently remote to be deemed illusory." (internal citation and quotation marks omitted)); *Mine Safety Appliances Co. v. AIU Ins. Co.*, No. N10C-07-241 MMJ, 2016 Del. Super. LEXIS 64, at \*11 (Super. Ct. Jan. 22, 2016) (finding certain exclusions could not be read to bar coverage as such a reading would render coverage illusory, given that the insured manufactured mine safety appliances, and "[t]o permit the Insurers to deny coverage under these circumstances would mean that there could never be coverage for any alleged failure or defect in the respiratory safety equipment manufactured by [the insured]"); *Am. States Ins. Co. v. Kiger*, 662 N.E.2d 945, 949 (Ind. 1996) (refusing to adopt an insurer's interpretation of a policy that would "negate virtually all coverage," and stating "[w]e are particularly troubled by the interpretation offered by [insurer], as it makes it appear that [insured] was sold a policy that provided no coverage for a large segment of the [insured's] gas station's business operations"); *Monticello Ins. Co. v. Mike's Speedway Lounge*, 949 F. Supp. 694, 704 (S.D. Ind. 1996) (finding an absolute liquor exclusion in a policy was worded so broadly as to exclude coverage for essentially all potential claims and so as to defy reasonable limiting interpretation, considering that the insurer sold commercial general liability coverage to the insured, a tavern). Therefore the Court should decline to adopt Philadelphia's interpretation of the CL and Umbrella Policies because it would result in illusory coverage. *See Crum & Forster*

*Specialty Ins. Co. v. DVO, Inc.*, 939 F.3d 852, 858 (7th Cir. 2019) ("When a policy's purported coverage is illusory, the policy may be reformed to meet an insured's reasonable expectation of coverage."); *see also Mike's Speedway Lounge*, 949 F. Supp. at 703 (noting courts within that jurisdiction should not permit an insurer to take advantage of other exclusions, at least as a matter of law, when there is evidence that the insured reasonably expected coverage to apply).

Furthermore, regardless of the fact that Philadelphia's position would render both the CL and Umbrella Policies illusory, Defendants are "insureds" under the explicit language of the Umbrella Policy because, as explained above, they are "insureds" under an "underlying insurance" policy.

> **B.      The Allegations in the Amended Complaint Allege an "Occurrence"**

With regard to an "occurrence," the Umbrella Policy states, in pertinent part:

> **SECTION I – COVERAGES**
> **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1.      Insuring Agreement**
>
> **Bodily Injury and Property Damage**
>
> **a.**      This insurance applies to "bodily injury" or "property damage" only if:
>
>> **(1)**      The "bodily injury" or "property damage" arising out of an "occurrence" takes place in the "coverage territory" . . . .

The CL Policy similarly states "This insurance applies to "bodily injury" and "property damage" only if: (1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory.'" Both the CL and Umbrella Policies later define "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Neither policy contains a definition of "accident."

In *Green v. United Ins. Co. of Am.*, 174 S.E.2d 400, 402 (S.C. 1970), the South Carolina Supreme Court considered the definition of "accident" as it was used in an insurance policy and stated, "A quite simple, but by no means all inclusive, definition of the word 'accident' as understood by the ordinary man is, 'An unexpected happening or event, which occurs by chance and usually suddenly, with harmful result, not intended or designed *by the person suffering the harm or hurt*.'" (emphasis added). In *State Farm Mut. Auto. Ins. Co. v. Moorer*, 496 S.E.2d 875, 882 (S.C. Ct. App. 1998), the South Carolina Court of Appeals considered whether a shooting constituted an "occurrence" or "accident" under four automobile liability policies. The court noted that some insurance policies have defined an "accident" or "occurrence" as an event resulting in damages that were not expected or intended *by the insured. Id.* In the absence of such language, the court in *Moorer* relied on the definition of accident provided in *Green* in concluding that, as the harm or injury was not expected by the person suffering the harm, the policy provided coverage. *Id.*; *see Am. Serv. Ins. Co. v. OnTime Transp.*, LLC, Civil Action No. 5:17-cv-01120-JMC, 2019 U.S. Dist. LEXIS 143630, at \*20-21 (D.S.C. Aug. 22, 2019) ("In the absence of a prescribed definition, 'accident' [means] '[a]n unexpected happening or event, which occurs by chance and usually suddenly, with harmful result, not intended or designed *by the person suffering the harm or hurt*.'" (quoting *Auto Owners Ins. Co. v. Newman*, 385 S.C. 187, 684 S.E.2d 541, 543 (S.C. 2009) (emphasis added))). The alleged injuries suffered by Renee S. Beach, as Personal Representative of the Estate of Mallory Beach, were undoubtedly not intended or designed by the person suffering the harm or hurt. Even if the Court were to adopt a definition of "accident" that would focus on the perspective of the actor, rather than the person harmed, the allegations of the underlying lawsuit would still constitute an "accident." Nowhere in the Complaint does underlying plaintiff contend that the alleged catastrophic injuries and resulting death of Mallory Beach were somehow "intended" by Defendants. *See Goethe v.*

*N.Y. Life Ins. Co*., 183 S.C. 199, 190 S.E. 451 (S.C. 1937)) (defining an accident as "an effect which the actor did not intend to produce and cannot be charged with the design of producing.").

As such, the underlying claims, which arise from a February 23, 2019 boat accident, unquestionably arise from an "occurrence," such that they are covered by the policies.

**C.      The Policies' Expected or Intended Injury Exclusions Do Not Bar Coverage**

The policies' Expected or Intended Injury exclusions clearly do not bar coverage in this case.  That exclusion is the same in both policies and states:

> **SECTION I – COVERAGES**
>
> **COVERAGE  A – BODILY  INJURY  AND  PROPERTY DAMAGE LIABILITY**
>
> **3.      Exclusions**
>
> This insurance does not apply to:
>
> **a.      Expected Or Intended Injury**
>
>> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

"[A]n exclusion for 'bodily injury . . . which is expected or intended by the insured' . . . is commonly referred to as the 'intentional act exclusion.'" *Vermont Mut. Ins. Co. v. Singleton By & Through Singleton*, 446 S.E.2d 417, 419 (S.C. 1994).  In *Singleton*, Stephen Webb argued he was entitled to a legal defense and insurance coverage for claims stemming from the injuries suffered by Benjamin Singleton, after Singleton was injured in a fist fight with Webb.  The court held that a two-prong analysis established in *Miller v. Fidelity Phoenix Ins. Co.*, 231 S.E.2d 701 (S.C. 1977), was required to determine the validity of the intentional act exclusion, specifically (1) whether the act causing the loss was intentional, and (2) whether the results of the act were intended.  *Singleton*, 446 S.E.2d at 419.  The court determined that the first prong was satisfied, as Webb intended to strike Singleton regardless of whether the blow was struck in self-defense.

16

*Id.* at 420. As to the second prong, the court noted that the self-defense claim raised a question of whether the results were intended, and the parties seeking coverage argued Webb did not specifically intend to strike Singleton in the face or expect Singleton would suffer the extensive eye injuries that he did. *Id.* The South Carolina Supreme Court affirmed the special referee's finding that the intentional act exclusion did not apply, as there was evidence to support the special referee's finding that the result was not intended. *Id.* at 420-21. "To exclude coverage under the *Miller* test, the act causing the loss must have been intentional and the consequences must have been intended." *S.C. Farm Bureau Mut. Ins. Co. v. Dawsey*, 638 S.E.2d 103, 105 (S.C. Ct. App. 2006); *Auto Owners Ins. Co. v. Pers. Touch Med Spa, LLC*, 763 F. Supp. 2d 769, 781 (D.S.C. 2011) (noting that when interpreting an intentional acts exclusion, "'the better rule is to the effect that not only the act causing the loss must have been intentional but that the results of the act must also have been intended'" (quoting *Miller*, 268 S.C. at 75, 231 S.E.2d at 702)).

The underlying Amended Complaint's only causes of action against Defendant Murdaugh and Defendant Murdaugh, Jr. are negligence claims. To establish a cause of action in negligence, three essential elements must be proven: (1) duty of care owed by defendant to plaintiff; (2) breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach of duty. *See Bishop v. S.C. Dep't of Mental Health*, 331 S.C. 79, 88, 502 S.E.2d 78, 82 (1998). The underlying plaintiff's negligence claims against Defendant Murdaugh and Defendant Murdaugh, Jr. are not dependent on the alleged bodily injury being expected or intended by Defendants. In fact, nowhere in the Amended Complaint does underlying plaintiff contend the alleged "catastrophic injuries . . . [and resulting] death" of Mallory Beach was expected or intended by Defendants. As such, this exclusion does not apply to bar coverage in the case at hand.[6] *See Owners Ins. Co. v. Clayton*, 364 S.C. 555, 560, 614

---

[6] As discussed earlier, Philadelphia's position on Defendants' "insured" status is not only in contravention of the policy language, it relies on an interpretation that would render coverage

S.E.2d 611, 614 (2005) ("Insurance policy exclusions are construed most strongly against the insurance company, which also bears the burden of establishing the exclusion's applicability.").

### D. The Watercraft Exclusion Does Not Bar Coverage

The Umbrella Policy's Watercraft Exclusion states, in pertinent part:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**3. Exclusions**

This insurance does not apply to:

**g. Aircraft or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft or watercraft owned, or operated by; or rented or loaned to any insured. Use includes operation and "loading or unloading."

. . .

This exclusion does not apply to:

**(4)** The extent that valid "underlying insurance" for the aircraft or watercraft liability risks described above exists or would have existed but for the exhaustion of underlying limits for "bodily injury" or "property damage." Coverage provided will follow the provisions, exclusions and limitations of the "underlying insurance" unless otherwise directed by this insurance . . . .

As previously discussed in this memorandum, there is valid "underlying insurance" for the watercraft liability risks at issue in the underlying lawsuit. Progressive Northern Insurance Company policy number 85003211 provided insurance coverage for the watercraft involved in the February 23, 2019 accident. That watercraft is listed on the Progressive policy's declarations

---

illusory. Some jurisdictions have held that where a policy is illusory, an insurer cannot then try to take advantage of other exclusions within the policy, at least as a matter of law. *See Mike's Speedway Lounge*, 949 F. Supp. at 703.

page, Defendant Murdaugh is the named insured on the Progressive policy, and Defendants are insureds under that policy. In fact, Progressive Northern Insurance Company has been defending the Murdaughs in the Beach lawsuit pursuant to that Policy.[7] See Exhibit 4 (Affidavit of Richard Alexander Murdaugh). As such, the exception to this exclusion applies.

Meanwhile, the CL Policy contains an "Aircraft, Auto or Watercraft" exclusion that states "this insurance does not apply to . . . 'Bodily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to any insured." However, as previously discussed, the CL Policy is illusory and Philadelphia should not be permitted to also try to take advantage of other exclusions, such as that policy's watercraft exclusion. *See Mike's Speedway Lounge*, 949 F. Supp. at 703 (recognizing in that jurisdiction that where a policy is illusory, an insurer cannot then try to take advantage of other exclusions within the policy, at least as a matter of law).

## VI.   CONCLUSION

The Umbrella Policy defines an "insured" to include "[a]ny other person or organization insured under any policy of the 'underlying insurance.'" Regardless of whether the CL Policy constitutes an applicable "underlying insurance" policy, the Progressive Northern Insurance Company policy is an applicable "underlying insurance policy." The Umbrella Policy states its insurance applies to "bodily injury" arising out of an "occurrence" that takes place in the "coverage territory" and within the "policy period," and these conditions are clearly met. Furthermore, none of the exclusions relied upon by Philadelphia bar coverage for Defendants in this matter. Therefore, the Umbrella Policy affords coverage to Defendant Murdaugh and Defendant Murdaugh, Jr. in the underlying lawsuit. Additionally, the CL policy is illusory, in that Philadelphia purports to negate all coverage for the insured, and that policy should therefore

---

[7] This fact is admitted in Philadelphia's own Motion for Summary Judgment and accompanying memorandum. See Philadelphia's Motion for Summary Judgment page 2 footnote 2.

be interpreted to afford coverage to the insured.  For those reasons, Defendants respectfully request this Court grant Defendants' motion for summary judgment and declare that the policies provide coverage to Defendants in the underlying lawsuit and Philadelphia has the duties to defend and indemnify Defendants in the underlying lawsuit.

Respectfully submitted,

TURNER PADGET GRAHAM & LANEY, P.A.

/s/Robert E. Kneece, III
John S. Wilkerson, Federal ID No.:  4657
Robert E. Kneece III, Federal ID No.:  12351
40 Calhoun Street, Suite 200
Post Office Box 22129 (29413)
Charleston, SC 29401
Telephone:  (843) 576-2801
Facsimile:  (843) 577-1649
Email: JWilkerson@TurnerPadget.com
          RKneece@TurnerPadget.com


GRIFFIN DAVIS

James M. Griffin, Federal ID No.:  1053
4408 Forest Drive, Suite 300
P.O. Box 999 (29202)
Columbia, SC 29206
Email: jgriffin@griffindavislaw.com

**ATTORNEYS FOR DEFENDANTS RICHARD ALEXANDER MURDAUGH AND RICHARD ALEXANDER MURDAUGH, JR.**

January 8, 2021
Charleston, South Carolina