IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Philadelphia Indemnity Insurance Company, | C/A No. 9:19-cv-02782-SAL |
| Plaintiff, | |
| v. | **OPINION & ORDER** |
| Richard Alexander Murdaugh, Richard Alexander Murdaugh, Jr., and Renee S. Beach, as Personal Representative of the Estate of Mallory Beach, | |
| Defendants. | |

This insurance declaratory judgment matter is before the court on cross-motions for summary judgment. The question for the court is whether, pursuant to two insurance policies, Plaintiff Philadelphia Indemnity Insurance Company ("Plaintiff") owes coverage to Defendants Richard Alexander Murdaugh ("Murdaugh") and Richard Alexander Murdaugh, Jr. ("Murdaugh Jr.") (together "Murdaugh Defendants") for the claims made against them in an action captioned, *Renee S. Beach, as Personal Representative of the Estate of Mallory Beach v. Gregory M. Parker, Inc. a/k/a Parker's Corporation d/b/a Parkers 5 et al.*, Civil Action No. 2019-CP-25-00111 (the "Underlying Lawsuit"). For the reasons set forth below, the court finds that there is no coverage available to the Murdaugh Defendants, and Plaintiff does not have a duty to defend them in the Underlying Lawsuit. Therefore, the court grants Plaintiff's motion for summary judgment and denies the Murdaugh Defendants' motion for summary judgment.

## BACKGROUND & PROCEDURAL HISTORY

Plaintiff filed this declaratory judgment action on September 30, 2019, seeking several no-coverage declarations related to two insurance policies it issued to Murdaugh. [ECF No. 1,

Compl.] Defendant Renee S. Beach, as the Personal Representative of the Estate of Mallory Beach ("Defendant Beach"), answered on December 13, 2019. [ECF No. 7.] The Murdaugh Defendants filed their answer on January 22, 2020. [ECF No. 12.]

Plaintiff moved for summary judgment on October 30, 2020, arguing there is no genuine issue of any material fact relating to the declaratory judgment claims and that it is entitled to judgment as a matter of law. [ECF Nos. 20, 21.] The Murdaugh Defendants submitted a response in opposition to Plaintiff's Motion on November 30, 2020. [ECF No. 28.] Therein, the Murdaugh Defendants do not argue that there is any genuine dispute of material fact. Instead, they argue one policy is illusory and the other provides coverage based on a separate watercraft policy issued to Murdaugh. Plaintiff filed its reply on January 11, 2021, and, after obtaining leave of court, the Murdaugh Defendants filed a surreply. [ECF Nos. 35, 36, 40, 42.]

The Murdaugh Defendants filed their own motion for summary judgment on January 8, 2021. [ECF No. 34.] The motion takes their arguments in opposition to Plaintiff's motion and submits them as affirmative bases for a grant of summary judgment in their favor. Plaintiff responded on January 22, 2021, and the Murdaugh Defendants filed a reply. [ECF No. 39.] Thus, both motions are fully briefed and ripe for resolution by the court.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. American Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The party seeking summary judgment shoulders the

initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party makes this threshold demonstration, the non-moving party may not rest upon mere allegations or denials averred in the pleading but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56; *see also Celotex Corp.*, 477 U.S. at 323. A party asserting that a fact is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). A litigant is unable to "create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1996).

"When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (citing *Philip Morris, Inc. v. Harshbarger*, 122 F.3d 58, 62 n.4 (1st Cir. 1997)). "[T]he court must take care to 'resolve all factual disputes and any competing, rational inferences in the light most favorable' to the party opposing that motion." *Id.* (citing *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996)).

3

## ANALYSIS & DISCUSSION

Before reaching the substance of the parties' summary judgment arguments, the court will outline the allegations in the Underlying Lawsuit and the policy provisions at issue. As the parties recognize, the question of whether Plaintiff has a duty to defend the Murdaugh Defendants in the Underlying Lawsuit turns on whether the facts alleged in the underlying complaint create a possibility of coverage under the insurance policies. *Agape Senior Primary Care, Inc. v. Evanston Ins. Co.*, 304 F. Supp. 3d 492, 497 (D.S.C. 2018). If the allegations in the underlying action do not raise the possibility of coverage under the policies, there is no duty to defend. And without a duty to defend, there is no duty to indemnify.[1]

## I. Underlying Lawsuit: What are the Allegations?[2]

The Underlying Lawsuit stems from certain events leading up to and including a boat crash that occurred on or about February 23, 2019. [ECF No. 1-1, Underlying Compl.] The crash resulted in the death of Mallory Beach, and a wrongful death action, *i.e.*, the Underlying Lawsuit, followed.

The Underlying Lawsuit's amended complaint ("Underlying Complaint") alleges that Murdaugh, Jr. allowed his younger brother, who was under the age of 21, to "use his driver's

---

[1] The duty to defend is both separate from and broader than the duty to indemnify. *Ross Dev. Corp. v. Fireman's Fund Ins. Co.*, 809 F. Supp. 2d 449, 457 (D.S.C. 2011). While the question of whether an insurer has a duty to defend an insured is ripe upon the filing of an underlying complaint, the question of whether that insurer has a duty to indemnify is "ordinarily [] advisory when the insured's liability remains undetermined." *Trustgard Ins. Co. v. Collins*, 942 F.3d 195, 200 (4th Cir. 2019). Given that the Murdaugh Defendants' liability remains undetermined, the court limits its summary judgment analysis to the following question: Do the allegations in the Underlying Lawsuit set forth a *possibility* of coverage under the two policies? In that regard, if the court determines Plaintiff does not have a duty to defend, it necessarily follows that Plaintiff does not have a duty to indemnify.

[2] A copy of the amended complaint in the Underlying Lawsuit is attached as an exhibit to Plaintiff's Complaint. [ECF No. 1-1.]

4

license to purchase and consume alcohol illegally." *Id.* at ¶ 8; *see also* Compl. at ¶ 11; [ECF No. 12, Murdaugh Ans. at ¶ 3 (admitting "that the stated allegations are correct recitations of the allegations contained in the underlying lawsuit but [] deny[ing] the truth of each and every allegation contained therein").] It further alleges that Murdaugh Jr. had "actual knowledge" that his brother was "us[ing] the license to purchase alcohol for consumption by other minors." Underlying Compl. at ¶ 8; *see also* Compl. at ¶ 10; Murdaugh Ans. at ¶ 3.

As to Murdaugh, the Underlying Complaint contends that he "had knowledge or should have known that his minor son illegally purchased and consumed alcohol on a regular basis by using or displaying" Murdaugh Jr.'s license and he "knowingly and willfully allowed his minor son to illegally use" Murdaugh Jr.'s license "to purchase or consume alcohol." Underlying Compl. at ¶¶ 9, 10; Compl. at ¶ 10; Murdaugh Ans. at ¶ 3. It further contends that "it was foreseeable that [Murdaugh's] minor son would purchase alcohol for consumption by other minors." Underlying Compl. at ¶ 10; Compl. at ¶ 10; Murdaugh Ans. at ¶ 3.

According to the Underlying Complaint, on February 23, 2019, Murdaugh Jr.'s brother used the license to purchase alcoholic beverages and then shared the beverages with other minors who then became intoxicated. Underlying Compl. at ¶¶ 12–14; Compl. at ¶ 11; Murdaugh Ans. at ¶ 3. It is alleged that "certain minors . . . consumed the alcohol . . . throughout the evening of February 23, 2019, and at least one of the minors was operating a boat with several passengers on Archer's Creek when the boat collided with a bridge." Underlying Compl. at ¶ 16; Compl. at ¶ 12; Murdaugh Ans. at ¶ 3. Mallory Beach was ejected from the boat, suffered "catastrophic injuries to her person," and died. *Id.*

Based on the aforementioned allegations, the plaintiff in the Underlying Lawsuit alleges Murdaugh and Murdaugh Jr. were "negligent, negligent per se, careless, reckless, grossly

negligent, willful and wanton and acted intentionally" in relation to the events leading up to the death of Mallory Beach. Underlying Compl. at ¶ 18(j)–(o); Compl. at ¶ 13; Murdaugh Ans. at ¶ 3. She seeks "actual and punitive damages, costs and attorneys' fees." Underlying Compl. at WHEREFORE.

## II. The Policies: What Do They Cover?

Plaintiff in this case is the insurance company that issued a commercial lines policy of insurance, policy number PHPK1926389 ("CGL Policy"), and a commercial umbrella liability insurance policy, policy number PHUB660797 ("Umbrella Policy"), to Murdaugh on January 6, 2019. Compl. at ¶ 17; Murdaugh Ans. at ¶ 4. Both policies cover the policy period January 6, 2019 to January 6, 2020, and describe the "Business" as "Guides and Outfitters." Compl. at ¶¶ 17, 18; Murdaugh Ans. at ¶¶ 4, 5; [*see also* ECF No. 1-2 at pp.6, 13; ECF No. 1-3 at p.4.][3]

### A. CGL Policy.

Coverage A of the CGL Policy provides that Plaintiff "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." [ECF No. 1-2, Commercial General Liability Coverage Form, Sec.I(A)(1)(a), p.1.] "However, [the insurer] will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply." *Id.* The "bodily injury" or "property damage" must be caused by an occurrence, take place in the coverage territory, and occur during the policy period. *Id.* at Sec.I(A)(1)(b)(1), (2). "Bodily

---

[3] Copies of the policies appear in a variety of places in the record, and no party disputes the authenticity of any copies submitted. Copies were attached to the Complaint, the Declaration by Plaintiff, Plaintiff's Motion, the Murdaugh Defendants' opposition to Plaintiff's Motion, and the Murdaugh Defendants' Motion. [ECF Nos. 1-2, 1-3, 19-2, 19-3, 21-3, 21-4, 28-2, 28-3, 34-3, 34-4.] It appears all copies are the same. For consistency purposes and ease of reference, the court cites to the policies attached to the Complaint throughout the remainder of this order.

injury" includes "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." *Id.* at Sec.V(3), p.13. An "occurrence" is defined as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at (13), p.15.

Section II defines who constitutes an "insured" under the CGL Policy. *See id.* at Sec.II, p.9. If an individual is designated in the declarations, the individual and the individual's spouse are both insureds. *Id.* at (1)(a); *see also id.* at Common Policy Declarations (listing R. Alexander Murdaugh as the named insured). Moreover, the "'volunteer workers only while performing duties related to the conduct of [the] business, or [] 'employees' . . . only for acts within the scope of their employment . . . or while performing duties related to the conduct of [the] business" constitute insureds. *Id.* at Sec.II(2)(a), p.10. Further, "[a]ny person (other than [the] 'employee' or 'volunteer worker'), or any organization while acting as your real estate manager" constitutes an insured. *Id.* at (b).[4] A "volunteer worker" is a "person who is not [an] 'employee' and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed[.]" *Id.* at Sec.V(20), p.16. An "employee," in contrast, includes a "leased worker," but not a "temporary worker." *Id.* at (5) p.13.[5]

The CGL Policy also includes several endorsements that modify coverage. One such endorsement is the "Limitation of Coverage to Designated Activities" endorsement. It "modifies insurance provided under" the Commercial General Liability Coverage Part. *Id.* at Limitation of

---

[4] Section II includes additional definitions of "insured," but none of those definitions are at issue in this case.

[5] A "leased worker" is a "person leased . . . by a labor leasing firm under an agreement between [the insured] and the labor leasing firm, to perform duties related to the conduct of your business." [ECF No. 1-2 at Sec.V(10), p.14.]

Coverage to Designated Activities. In that regard, the insurance "*applies only* to 'bodily injury,' 'property damage,' 'personal and advertising injury,' and medical expenses *arising out of* the **Activities** listed in the above **SCHEDULE**." *Id.* (emphasis added). The Schedule then includes one activity: Private hunting operations.

In addition to the endorsement, the CGL Policy includes several exceptions, including an expected or intended injury exclusion and an aircraft, auto, and watercraft exclusion. *Id.* at Sec.I(2)(a), (g), pp.2, 4. Plaintiff relies on both exclusions at summary judgment. The first excludes coverage for bodily injury "expected or intended from the standpoint of the insured," but does not exclude bodily injury "resulting from the use of reasonable force to protect persons or property." *Id.* at Sec.I(2)(a). The second excludes coverage for bodily injury "arising out of the ownership, maintenance, use or entrustment to others of any . . . watercraft owned or operated by or rented or loaned by any insured." *Id.* at Sec.I(2)(g).

### B. Umbrella Policy.

As noted above, at the same time Plaintiff issued the CGL Policy, it issued a Commercial Umbrella Liability Insurance Policy, the "Umbrella Policy." [ECF No. 1-3.] The Umbrella Policy's declarations list the form of business as "Individual," and the business description as "Guides & Outfitters Umbrella." *Id.* at Commercial Umbrella Liability Insurance Policy Declarations, p.2. The Schedule of Underlying Insurance lists one commercial general liability policy issued by Plaintiff, and it is the CGL Policy described above. *Id.* at p.3. The "Employers' Liability," "Commercial Auto Liability," "Professional Liability, "Employee Benefits Liability," "Abuse or Molestation," "Directors & Officers Liability," "Liquor Liability," "Watercraft Liability," and "Other Coverages Not Included in Above" are all blank. *Id.* at pp.3–5.

The Umbrella Policy provides that Plaintiff "will pay on behalf of the insured the 'ultimate net loss' in excess of the 'applicable underlying limit',' whether or not collectible, which the insured becomes legally obligated to pay as damages because of 'bodily injury,' 'property damage' or 'personal and advertising injury' to which this insurance applies." *Id.* at Commercial Umbrella Liability Insurance Policy, Sec.I(1), p.1. Like the CGL Policy, the "bodily injury" must arise out of an "occurrence" within the "coverage territory," and during the policy period. *Id.* at (1)(a)(1), (2).[6]

Like the CGL Policy, the Umbrella Policy defines who constitutes an "insured" in Section II. *Id.* at Sec.II. An insured includes the "individual" "designated in the Declarations," including that person's spouse, but "only with respect to the conduct of a business of which [the named individual is] the sole owner." *Id.* at (1)(a). "'[V]olunteer workers' [] while performing duties related to the conduct of your business, or your 'employees' . . . for acts within the scope of their employment . . . or while performing duties related to the conduct of your business" also constitute insureds. *Id.* at (1)(c)(1). This definition also includes "[a]ny person . . . while acting as your real estate manager." *Id.* at (1)(c)(2). And the final definition of "insured" at issue in the case is found in subsection (f):

> Any other person or organization insured under any policy of <u>the</u> "underlying insurance." This grant is subject to all the limitations upon coverage under such policy other than the limits of the "underlying insurers"[sic] liability.

*Id.* at (1)(f) (emphasis added). "Underlying insurance" is defined as "any policies of insurance listed in the Declarations under the Schedule of Underlying Insurance[7] and includes" "[a]ny

---

[6] The term "bodily injury" is defined in the same manner as in the CGL Policy. [ECF No. 1-3, Commercial Umbrella Liability Insurance Policy, Sec.V(6).]

[7] It is undisputed that the only policy appearing in the Schedule is the CGL Policy.

renewal or replacement of such policies" and "[a]ny other insurance available to the insured." *Id.* at Sec.V(24). Similarly, "underling insurer" includes "any insurer which provides any policy of insurance listed in the Schedule of Underlying Insurance or any other insurance available to the insured." *Id.* at (25).

Also like the CGL Policy, the Umbrella Policy includes endorsements that modify coverage. The endorsement at issue in this case is the General Liability Follow Form Endorsement. It "modifies [the] insurance provided under" the "Commercial Umbrella Liability Insurance Policy" *i.e.*, the Umbrella Policy itself. *Id.* at General Liability Follow Form Endorsement. It states:

> This policy is intended to include Commercial General Liability Coverage.
>
> The Commercial General Liability insurance provided will follow the same provisions, exclusions and limitations that are contained in the applicable "underlying insurance" shown in the Schedule of Underlying Insurance unless otherwise directed by this policy, or an endorsement to this policy.
>
> To the extent that such provisions differ or conflict, the provisions of this policy will apply. However, the coverage provided under this policy will not be broader than that provided by the applicable "underlying insurance."
>
> Any per location or project aggregate limit of insurance that is extended in the applicable "underlying insurance" shown in the Schedule of Underlying Insurance will not apply to the coverage provided by this endorsement.

*Id.* (emphasis added).

### III. The Parties' Positions and the Court's Analysis.

Plaintiff is currently defending Murdaugh and Murdaugh Jr. under the CGL Policy pursuant to a reservation of rights, but it filed this action seeking declarations that the two policies do not provide coverage and it has no obligation to defend the Murdaugh Defendants in the Underlying Lawsuit. *See* Compl. at ¶ 32; Murdaugh Ans. at ¶ 7. In its motion for summary judgment, Plaintiff

raises five arguments: (1) the Murdaugh Defendants are not insureds under the policies; (2) the policies only provide coverage for "bodily injury" that arises out of private hunting operations; (3) the Underlying Lawsuit does not allege an "occurrence;" (4) the watercraft exclusion applies to exclude coverage; and (5) because there is no coverage, it has no duty to defend or indemnify. [ECF No. 21-1.]

In response to Plaintiff's Motion, and in their own motion for summary judgment, the Murdaugh Defendants claim the policies provide coverage in relation to the allegations asserted in the Underlying Lawsuit. More specifically, they argue that because they are insureds under a Progressive Northern Insurance Company[8] insurance policy covering the 2006 Sea Hunt 175 Escape involved in the February 23, 2019 boat crash, they are insureds under the Umbrella Policy. [ECF No. 28 at pp.5–12; ECF No. 34-1 at pp.5–11.] Further, the Murdaugh Defendants contend that Plaintiff's coverage position renders coverage under both policies illusory. [ECF No. 28 at pp.12–14; ECF No. 34-1 at pp.11–14.] They also contend that the Underlying Lawsuit alleges an "occurrence," and the exclusions do not bar coverage.

Neither party's opposition briefing identifies a disputed fact, let alone a material one.[9] *See* Fed. R. Civ. P. 56(a), (c). Thus, the court is left with examining the insurance contracts at issue,

---

[8] Progressive is not a party to this action.

[9] In their opposition to Plaintiff's Motion, the Murdaugh Defendants make a generalized assertion that "the denial of [Plaintiff's] Motion for Summary Judgment merely requires the existence of a genuine issue as to any material fact." [ECF No. 28 at p.20 n.7.] This, of course, is not enough to defeat a properly supported motion for summary judgment. *See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits, or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence . . . of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."). The generalized statement fails to identify any fact in dispute, let alone a material one supported by the record.

assessing whether the language is clear or ambiguous, and then determining whether one party or the other is entitled to judgment as a matter of law. Therefore, before reaching the specifics of the parties' arguments, the court outlines the interpretation principles guiding its analysis.

### A. Interpreting Insurance Contracts and the Duty to Defend.

In South Carolina, "[i]nsurance policies are subject to the general rules of contract construction." *B.L.G. Enters., Inc. v. First Fin. Ins. Co.*, 514 S.E.2d 327, 330 (S.C. 1999). "The cardinal rule of contract interpretation is to ascertain and give legal effect to the parties' intentions as determined by the contract language." *Schulmeyer v. State Farm Fire and Cas. Co.*, 579 S.E.2d 132, 134 (S.C. 2003). "An insurance contract is read as a whole document so that 'one may not, by pointing out a single sentence or clause, create an ambiguity.'" *Id.* (citing *Yarborough v. Phoenix Mut. Life Ins. Co.*, 225 S.E.2d 344, 348 (S.C. 1976)). "The meaning of a particular word or phrase is not determined by considering the word or phrase by itself, but by reading the policy as a whole and considering the context and subject matter of the insurance contract." *State Farm Fire and Cas. Co. v. Morningstar Consultants, Inc.*, No. 6:16-cv-01685, 2017 WL 2265919, at *2 (D.S.C. May 24, 2017) (citing *Yarborough*, 225 S.E.2d at 349).

"When a contract is unambiguous, clear and explicit, it must be construed according to the terms the parties have used, to be taken and understood in their plain, ordinary and popular sense." *C.A.N. Enters., Inc. v. South Carolina Health & Human Servs. Fin. Comm'n*, 373 S.E.2d 584, 586 (S.C. 1988). Ambiguities, in contrast, are resolved in favor of the insured. *Greenville Cnty. v. Insurance Reserve Fund*, 443 S.E.2d 552, 548 (S.C. 1994) ("Where the words of an insurance policy are capable of two reasonable interpretations, that construction will be adopted which is most favorable to the insured." (citing *McPherson v. Michigan Mut. Ins. Co.*, 426 S.E.2d 770, 771 (S.C. 1993))). But "[w]here a motion for summary judgment presents a question concerning the

construction of a written contract, the question is one of law if the language employed by the contract is plain and unambiguous." *Moss v. Porter Bros., Inc.*, 357 S.E.2d 25, 27 (S.C. Ct. App. 1987).

Finally, it is well understood that an insurer's duty under a policy is "defined by the terms of the policy and cannot be enlarged by judicial construction." *South Carolina Ins. Co. v. White*, 390 S.E.2d 471, 474 (S.C. Ct. App. 1990). In assessing whether an insurer has a duty to defend an insured, the court "compare[s] the allegations in the complaint to the policy language." *Union Ins. Co. v. Soleil Grp., Inc.*, 465 F. Supp. 2d 567, 574 (D.S.C. 2006). "If the facts alleged in the underlying complaint 'fail to bring the case within the policy coverage, the insurer is free of the obligation to defend.'" *Id.* at 572 (citing *R.A. Earnhardt Textile Mach. Div., Inc. v. South Carolina Ins. Co.*, 282 S.E.2d 856, 857 (S.C. 1981)). "In examining [the] allegations, the 'court must look beyond the labels describing the act to the acts themselves which form the basis of the claim against the insurer.'" *Walde v. Ass'n Ins. Co.*, 737 S.E.2d 631, 635 (S.C. Ct. App. 2012) (citation omitted). Therefore, this court must examine the policy language, determine whether there are any ambiguities, and then compare the policy language to the allegations in the Underlying Lawsuit. *McElveen v. Cincinnati Ins. Co.*, 422 F. Supp. 3d 1068, 1074 (D.S.C. 2019).

**B. Who Constitutes an Insured?**

With the basic interpretation parameters in mind, the court turns to the first question of interpretation: Who constitutes an insured?

Plaintiff's Motion submits that the Murdaugh Defendants are not entitled to coverage, including a defense, because they do not qualify as "insureds" under the two policies. In response and in their own Motion, the Murdaugh Defendants submit that they qualify as "insureds" under

the *Umbrella Policy* and that Plaintiff's position on coverage renders both policies illusory. A closer look at the parties' arguments narrows the focus of the court's analysis.

As to Murdaugh, Plaintiff relies on the first definition of "insured" in the CGL Policy and the Umbrella Policy, *i.e.*, an individual designated in the declarations, but only "with respect to the conduct of a *business* of which [the individual is] the sole owner." [ECF No. 1-2, Commercial General Liability Coverage Form, Sec.II(1)(a) (emphasis added); ECF No. 1-3, Commercial Umbrella Liability Insurance Policy, Sec.II(1)(a) (same).] Plaintiff submits that because the "business" covered by the policies is one of "Guides & Outfitters" and the allegations against Murdaugh in the Underlying Lawsuit do not relate to that business, Murdaugh does not qualify as an "insured." [ECF No. 21-1 at p.15.]

With respect to Murdaugh, Jr., Plaintiff argues his name does not appear on the declarations and the only way he could qualify as an "insured" is if he is a "volunteer worker" or an "employee" of Murdaugh, acting within the scope of his employment. [ECF No. 21-1 at p.15.] Plaintiff submits that the Underlying Lawsuit does not allege that Murdaugh Jr. was acting in either capacity because it does not include any allegations related to the business described in the policies—one of "Guides & Outfitters." *Id.*

The Murdaugh Defendants do not dispute the fact that the policies define the business as one of "Guides & Outfitters," nor do they dispute the fact that the Underlying Lawsuit is entirely unrelated to the "conduct of [that] business." [ECF No. 28 at pp.7–9; *see also* ECF No. 34-1 at pp.5–9.] Moreover, the Murdaugh Defendants do not dispute that Murdaugh Jr. is not a "volunteer worker" or "employee" of Murdaugh. This is where they argue the illusory coverage doctrine and

their qualification as an "insured" under the Umbrella Policy.[10]  The court addresses—but ultimately disagrees—with both arguments.

### 1. Illusory Coverage Doctrine.

South Carolina's illusory coverage doctrine simply does not extend as far as the Murdaugh Defendants suggest.  The doctrine is intended "to protect insureds where the terms of an insurance policy exclude from coverage 'the very risk contemplated by the parties,' rendering a policy provision 'virtually meaningless.'"  *Dudek v. Commonwealth Land Title Ins. Co*., 466 F. Supp. 3d 610, 620 (D.S.C. 2020) (citing *Isle of Palms Pest Control Co. v. Monticello Ins. Co*., 459 S.E.2d 318, 321 (S.C. Ct. App. 1994), *writ granted in part on other grounds, decision aff'd*, 468 S.E.2d 304 (1996)).  It "applies where the language of the policy 'negate[s] virtually all coverage for the insured,' and the insurance contract, read literally, is 'a delusion to the insured.'"  *East Bridge Lofts Property Owners Ass'n, Inc. v. Crum & Forster Specialty Ins. Co*., No. 2:14-cv-2567, 2015 WL 12831694, at *2 (D.S.C. Dec. 22, 2015) (citations omitted).  Stated differently, "the doctrine applies when exclusions 'in effect allow the insurer to receive premiums when realistically it is not incurring any risk of liability.'"  *Id.* (citation omitted).

A recent explanation and application of the doctrine by the Honorable David C. Norton is particularly instructive to this court's analysis.  *See Dudek*, 466 F. Supp. 3d at 620.  Judge Norton applied the illusory coverage doctrine in *Dudek* because the policy extended coverage for a specific type of loss and then the exceptions eliminated that coverage.  *Id.* ("The Policy extends coverage for adverse easement claims and simultaneously, by way of two exclusions, completely eliminates the very coverage it purports to extend.").  Simply put, the coverage provisions gave the insured

---

[10] The Murdaugh Defendants also raise the illusory coverage doctrine in their own Motion.  The arguments of the parties are the same in both sets of briefing.  Thus, the court considers the issues together, affording each side the appropriate burden.

coverage for one type of loss, and the exceptions negated the coverage.  The end result was that the insured paid for a policy that did not offer any possibility of coverage.  Judge Norton's opinion stated: "The court can think of no policy provisions better suited for application of the illusory coverage doctrine."  *Id.*  Turning to the Murdaugh Defendants' arguments, the court quickly sees that it is not presented with a similar or analogous situation.

In his affidavit, Murdaugh submits that while he does "engage in Private Hunting Operations," he does not "engage[] in those operations as a business."  [ECF No. 28-4, Aff. of R. Murdaugh ¶ 4; *see also id.* at ¶¶ 5, 6.]  Accordingly, Murdaugh argues that if he is required to be engaged in "the conduct of a business of which you are the sole owner" to obtain coverage, he "would never be afforded coverage in any circumstance."  [ECF No. 34-1 at p.13; ECF No. 28 at p.13.][11]  This argument does not establish (or even suggest) that the policy is illusory, however.

Unlike the *Dudek* case, the Murdaugh Defendants do not point to a section of the policy providing that its intent is to provide coverage for a boating crash, followed by an exclusion taking away that same intended coverage.  Murdaugh also does not present any evidence to suggest that the policy provides no coverage in the event an individual is injured as a result of the admitted private hunting operations that take place on the property.  The court has no reason to believe that the policies would not provide coverage in the event all other policy requirements are met—bodily injury is the result of an occurrence, during the policy period, within the coverage territory, etc. Accordingly, Murdaugh's affidavit establishes—at best—a mistake on his part.  He thought he was purchasing one type of coverage but ended up with some another type of coverage (but

---

[11] In line with the same reasoning, Murdaugh Jr. would not ever qualify as an insured because, if there is no business, there are no employees.  Though, neither Murdaugh's affidavit nor the Murdaugh Defendant's opposition reach Plaintiff's arguments on the "volunteer worker" and "employee" issue.

coverage nonetheless).[12]  He expected one thing.  He received something else.[13]  The question then is whether this scenario renders the policy an illusory one?  From this court's perspective, it does not.

The Murdaugh Defendants' argument seems to be an attempt to morph the doctrine of reasonable expectations[14] into the illusory coverage doctrine.  The problem with this argument is two-fold.  One, the affidavit testimony does not raise even the possibility of illusory coverage, as recognized by South Carolina caselaw.  The two policies cover exactly what they say they will cover, and the Murdaugh Defendants have not submitted any evidence to the contrary.  The fact that Murdaugh *wants* the policies to cover the boating crash, and they may not, does not render the policies illusory.  Two, even if the court construed the Murdaugh Defendants' argument as one for application of the doctrine of reasonable expectations, the type of coverage available and provided by the policies was apparent from the face of the documents.  "South Carolina's limited application of the doctrine of reasonable expectations is consistent with South Carolina's broadly applied rule that '[o]ne entering into a contract should read it and avail himself of every reasonable opportunity to understand its content and meaning.'"  *DHW Purchasing Grp., LLC v. Hub Int'l Midwest Ltd.*, No. 3:19-cv-1243, 2019 WL 5700457, at *8 (D.S.C. Nov. 4, 2019) (citing *Doub v. Weathersby-*

---

[12] The court also notes that a self-serving affidavit, without more, is insufficient to defeat an opposing party's motion for summary judgment.  *See Nat'l Enters., Inc. v. Barnes*, 201 F.3d 331, 335 (4th Cir. 2000).

[13] The only claims in this action are Plaintiff's claims for declaratory judgment.

[14] South Carolina limits application of the doctrine of reasonable expectations.  "[T]he reasonable expectations of the parties entering into an insurance contract will be honored within the confines of [South Carolina's] interpretive rules and fairness principles."  *Bell v. Progressive Direct Ins. Co.*, 757 S.E.2d 399, 406 (S.C. 2014) (declining to apply the doctrine where the contract of insurance is unambiguous).  However, the doctrine "cannot be used to alter the plain terms of an insurance policy."  *Id.* at 407; *see also Allstate Vehicle and Prop. Ins. Co. v. Hunter*, No. 9:17-cv-00384, 2019 WL 251500, at *4 (D.S.C. Jan. 17, 2019) (declining to apply doctrine of reasonable expectations "[b]ecause the language of the Policy is clear and unambiguous").

17

*Breeland Ins. Agency*, 233 S.E.2d 111, 114 (S.C. 1977)). Anyone reading the policy would know that the coverage provided is limited to the business stated. The limitation is not hidden. It is repeated in several places. And the language used is unambiguous in all respects. Thus, there is no evidence in the record to support even an inference that the two policies are illusory.

In accordance with the foregoing analysis, the court finds that the illusory coverage doctrine does not apply as a matter of law. As a result, the court is left to compare the allegations in the Underlying Lawsuit to the unambiguous definitions of "insured" in the CGL Policy,[15] and it concludes that Plaintiff is entitled to a declaration that the allegations do not create the possibility of the Murdaugh Defendants qualifying as "insureds" under that policy. For this reason, the court finds that there is no coverage for the Murdaugh Defendants under the CGL Policy, and Plaintiff does not owe a duty to defend pursuant to that policy.

### 2. "Underlying Insurance."

The Murdaugh Defendants' second argument in response to Plaintiff's Motion (and in support of their own Motion) relates to the Umbrella Policy alone. The Murdaugh Defendants argue that they qualify as "insureds" under one part of one definition of "insured" in the Umbrella Policy. [ECF No. 28 at pp.5–12; *see id.* at p.9 ("Defendants are insureds under the Umbrella Policy"); ECF No. 34-1 at pp.5–11.] Plaintiff, in reply and response, submits that the Murdaugh Defendants'

---

[15] Again, the Murdaugh Defendants do not argue that the definitions of "insured" relied upon by Plaintiff are ambiguous. They are not. Instead, the Murdaugh Defendants' only argument in opposition to Plaintiff's argument that they are not "insureds" under the CGL Policy is the illusory coverage doctrine. The Murdaugh Defendants' second argument, addressed in Section III(B)(2)— "Underlying Insurance," relates *solely* to the definition of "insured" in the *Umbrella Policy*. Having rejected application of the illusory coverage doctrine, Plaintiff is entitled to judgment as a matter of law on its declaration the Murdaugh Defendants do not qualify as "insureds" under the CGL Policy.

reading contravenes an endorsement and the clear intent of the policy. [ECF No. 35 at pp.3–4; ECF No. 37 at pp.3–4.] The court agrees with Plaintiff.

An opening note: Analyzing and interpreting an insurance contract requires more page flipping and cross-referencing than any other task this court faces. The Murdaugh Defendants' arguments with respect to the Umbrella Policy's definition of "insured" epitomize that reality. While the court is forced to walk through each relevant and applicable provision in painstaking detail, deconstructing the language at each step and mapping out the flaws or missteps in the Murdaugh Defendants' analysis, the reality is that the issue simply is not that complicated. It can be summed up in two sentences. Sentence 1: A plain reading of the Umbrella Policy makes it abundantly clear that it goes hand-in-hand with the CGL Policy. Sentence 2: If the Murdaugh Defendants' alleged actions in the Underlying Lawsuit do not bring them within the definition of "insured" in the CGL Policy, they cannot qualify as "insureds" under Part (f) of Section II of the Umbrella Policy. Now, let's break down how the court gets there.

As noted above, the focus of the Murdaugh Defendants' argument is Part (f) of Section II— "Who is an Insured." Part (f) provides that an insured includes "[a]ny other person or organization under *any policy* of the 'underlying insurance.' This grant is subject to all the limitations upon coverage under such policy other than the limits of the 'underlying insurers'[sic] liability." [ECF No. 1-3, Commercial Umbrella Liability Insurance Policy, Sec.II(3)(f), p.16 (emphasis added).] The Murdaugh Defendants point to the phrase "any policy" therein, as well as the definitions of "underlying insurance" and "underlying insurer" to support their position that they are "insureds."

More specifically, the Murdaugh Defendants note that the terms "underlying insurance" and "underlying insurer" include the phrase, "[a]ny other insurance *available to the insured*." *Id.* at Sec.V(24), (25), p.28 (emphasis added). Pointing to these definitions, the Murdaugh Defendants

19

argue that the Progressive policy covering the watercraft at issue in the boat crash qualifies as "underlying insurance" by an "underlying insurer" because it is available to them. Thus, by the Murdaugh Defendants' reading, they qualify as insureds under the Umbrella Policy because they are "other person[s] . . . under any policy of the 'underlying insurance,'" with the Progressive policy being the underlying insurance. *Id.* at Sec.II(3)(f). The court cannot agree.

The Murdaugh Defendants' argument runs counter to the long-established construction principle that "[t]he provisions of an insurance contract should be considered within the context of the policy as a whole, 'and one may not, by pointing to a single sentence or clause, create an ambiguity.'" *Dudek*, 466 F. Supp. 3d at 616 (citing *Yarborough v. Phoenix Mut. Life Ins. Co.*, 225 S.E.2d 344, 348 (S.C. 1976)). A plain reading of the Umbrella Policy as a whole shows that subsection (f) only grants "insured" status to someone who qualifies as an insured under the CGL Policy. How does the court know that?

First, it looks to the entirety of the definition of "underlying insurance." Underlying insurance means "any policies of insurance listed in the Declarations under the Schedule of Underlying Insurance and includes: a. Any renewal or replacement of such policies; and b. Any other insurance available to the insured." [ECF No. 1-3, Commercial Umbrella Liability Insurance Policy, Sec.V(24), p.28.] Now, let's break it down. The first part provides that underlying insurance means those policies listed in the Declarations under the Schedule of Underlying Insurance. Looking to the Declarations and the Schedule, we see one policy—the CGL Policy. *Id.* at Schedule of Underlying Insurance p.3. No other policies are listed in the Schedule. At this point, the court knows that the CGL Policy qualifies as "underlying insurance."

Now, the court turns to the second portion of the definition of "underlying insurance," subsection (a). There, we see that "[a]ny renewal or replacement of *such policies*," qualifies as

"underlying insurance." *Id.* at Sec.V(24), p.28 (emphasis added). Renewals or replacements qualify as underlying insurance. But renewals or replacements of what? That's where the phrase "such policies" comes into play. Reading subsection (a) with the first part of the definition, the court concludes that "such policies" necessarily refers to the policies already identified. Again, back to the CGL Policy, the only policy identified in the Schedule. Therefore, pursuant to subsection (a), the court now knows that any renewal or replacement of the CGL Policy qualifies as underlying insurance.

Finally, we get to the portion of the definition relied upon by the Murdaugh Defendants, subsection (b). This portion of the definition provides that "[a]ny other insurance available to *the insured*" qualifies as underlying insurance. *Id.* (emphasis added). In accordance with South Carolina's principles of interpretation of insurance contracts, the court must read subsection (b) in with subsection (a) and the first portion of the definition of "underlying insurance," as well as all other provisions in the policy. Looking back to the first portion of the definition and subsection (a), we know that these two pieces of the definition are tied together, *i.e.*, the renewal or replacement policy only qualifies as "underlying insurance" if it is a renewal or replacement of the policy that appears in the Schedule. Reading subsection (b), we learn that other available insurance qualifies, but it must be other insurance "available to *the insured*." Well, who is "the insured?"

Again, reading subsection (b) in conjunction with subsection (a) and the first part of the definition of "underlying insurance," the only reasonable interpretation of the phrase "the insured" is the person qualifying as an insured under the policy listed in the Schedule or any renewal or replacement policy of such policy. Yet again, the court is right back where it started—the CGL Policy. For "[a]ny other insurance available to the insured" to qualify as underlying insurance under the Umbrella Policy, it must be an insurance policy available to an individual who qualifies

as an insured under the policy or policies identified in the first sentence and/or subsection (a) of the definition of "underlying insurance."  Here, the only qualifying policy is the CGL Policy.

As outlined in Section III(B)(1), *supra*, neither Murdaugh nor Murdaugh Jr. qualify as "insureds" under the CGL Policy in relation to the allegations lodged against them in the Underlying Lawsuit.  Because they do not qualify as "the insured[s]" under the CGL Policy, they cannot qualify as "insureds" under the Umbrella Policy by way of Part (f) of Section II's use of the term "underlying insurance."   The existence of the Progressive policy is simply irrelevant to the analysis of Part (f).

In accordance with the foregoing, the court declines the Murdaugh Defendants' suggestion that they qualify as "insureds" under the Umbrella Policy because they are insureds under the Progressive policy.  The plain and unambiguous language of the Umbrella Policy does not support their position.  Therefore, Plaintiff is entitled to judgment as a matter of law that neither Murdaugh nor Murdaugh Jr. qualify as insureds under the Umbrella Policy.[16]

### C. The Endorsement:  Coverage Limited to Private Hunting Operations.

Briefly, the court turns to the parties' arguments regarding whether coverage is limited in both policies to private hunting operations.  These arguments relate to two separate endorsements in the CGL and Umbrella policies.

Plaintiff points to the CGL Policy's endorsement that limits coverage to bodily injury arising out of private hunting operations and the Umbrella Policy's follow form endorsement to argue that there is no coverage available where the Underlying Lawsuit does not allege anything related to

---

[16] Just as with the CGL Policy, see footnote 15, *supra*, the Murdaugh Defendants do not contest Plaintiff's other arguments regarding why they fail to qualify as "insureds" under the other definitions in Section II of the Umbrella Policy.  Having rejected the Murdaugh Defendants' "underlying insurance" argument and having concluded that the insurance contract is plain and unambiguous, Plaintiff is entitled to judgment as a matter of law.

private hunting operations.  [ECF No. 21-1 at pp.15–17; *see also* ECF No. 37 at p.3.]  The Murdaugh Defendants do not dispute the fact that the endorsement limits the CGL Policy's coverage.  Rather, they respond (and argue in their own motion) that Plaintiff's argument with respect to the Umbrella Policy is "misguided."  [ECF No. 28 at pp.9–12; *see also* ECF No. 34-1 at pp.9–11.]  To support their position, the Murdaugh Defendants rely on their interpretation of "underlying insurance."

But first, the court begins with the CGL Policy's endorsement.  It is summarized above, but included in full below:

**<u>THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.</u>**

## LIMITATION OF COVERAGE TO DESIGNATED ACTIVITIES

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**SCHEDULE**

| Activities: |
| --- |
| Private hunting operations |

This insurance applies only to "bodily injury," "property damage," "personal and advertising injury," and medical expenses arising out of the **Activities** listed in the above **SCHEDULE.**

All other terms and conditions of this policy remain unchanged.

[ECF No. 1-2, Limitation of Coverage to Designated Activities.]  Unquestionably, and undisputed by the Murdaugh Defendants, the endorsement further limits the coverage available under the CGL Policy.  Pursuant to the endorsement, the CGL coverage "applies only to 'bodily injury' . . . arising out of [Private hunting operations]."  *Id.*

The endorsement's language is clear and unambiguous.  The Murdaugh Defendants, aside from their illusory coverage doctrine argument (an argument this court has already rejected), do not

dispute that fact.  Further, a review of the Underlying Complaint evidences that there are simply no allegations of bodily injury arising out of private hunting operations.[17]   The Murdaugh Defendants put up no dispute on that front either.  Thus, because the language of the CGL Policy's endorsement is unambiguous and the Underlying Lawsuit does not allege private hunting operations—meaning there is no possibility of coverage under the CGL Policy—Plaintiff is entitled to judgment as a matter of law.

At this point, the court need only take up whether the Umbrella Policy incorporates the endorsement into its policy terms.  Plaintiff argues it does.  The Murdaugh Defendants argue it does not.  To determine which party is correct, the court will begin with the language of the follow form endorsement.  It reads:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## GENERAL LIABILITY FOLLOW FORM ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY INSURANCE POLICY**

This policy is intended to include Commercial General Liability Coverage.

The Commercial General Liability insurance provided will follow the same provisions, exclusions and limitations that are contained in the applicable "underlying insurance" shown in the Schedule of Underlying Insurance unless otherwise directed by this policy, or an endorsement to this policy.

To the extent that such provisions differ or conflict, the provisions of this policy will apply. However, the coverage provided under this policy will not be broader than that provided by the applicable "underlying insurance."

Any per location or per project aggregate limit of insurance that is extended in the applicable "underlying insurance" shown in the Schedule of Underlying Insurance will not apply to the coverage provided by this endorsement.

---

[17] Private hunting operations is not a defined term in the policy.  Thus, the court defines the term "according to the usual understanding of the term's significance to the ordinary person." *Dupps v. Underwriters of Lloyd's London*, No. 9:09-cv-2396, 2013 WL 12153601, at *2 (D.S.C. Jan. 9, 2013) (citing *Mfrs. & Merchs. Mut. Ins. Co. v. Harvey*, 498 S.E.2d 222, 225 (S.C. Ct. App. 1998)). The Underlying Complaint's allegations related to the Murdaugh Defendants' conduct and the boat crash do not meet the "usual understanding" of private hunting operations.

[ECF No. 1-3, General Liability Follow Form Endorsement.]

The Murdaugh Defendants focus on the endorsement's references to "underlying insurance." They argue that Plaintiff's reliance on the follow form endorsement is "erroneously based upon the premise that the CL Policy is the only possible appliable 'underlying policy' for which the Umbrella Policy would provide excess coverage." [ECF No. 28 at p.10; ECF No. 34-1 at p.10.] According to the Murdaugh Defendants, the follow form endorsement pulls in the Progressive policy as the "underlying insurance" because it is "the applicable" underlying insurance as "otherwise directed by this policy." *Id.* But just as the court rejected the Murdaugh Defendants' "underlying insurance" argument above, it must reject it here. And a plain reading of the endorsement supports the court's conclusion.

The endorsement confirms that the intent of the policy is to provide Commercial General Liability Coverage and notes that the endorsement modifies the insurance provided by the Umbrella Policy. It goes on to states that the "Commercial General Liability Insurance provided will follow the same provisions, exclusions, and limitations that are contained in the applicable 'underlying insurance' <u>shown in</u> the Schedule of Underlying Insurance *unless* otherwise directed by this policy, or an endorsement to this policy." [ECF No. 1-3, General Liability Follow Form Endorsement (emphasis added).]

At the outset, the court notes that the only underlying insurance "<u>shown in</u>" the Schedule is the CGL Policy.[18]   Therefore, the CGL Policy is "the applicable 'underlying insurance,'" "*unless*" something else in the Umbrella Policy dictates a different result.

The Murdaugh Defendants' "unless" argument tracks their "underlying insurance" argument. They submit that because the definitions of "underlying insurance" and "underlying insurer" include "any other insurance available to the insured," the Progressive policy is "other insurance available" to them, and thus the Umbrella Policy does not follow form to the CGL Policy.  In sum, the Murdaugh Defendants believe the policy "otherwise directs."

For the same reasons outlined in Section III(B)(2), *supra*, the court finds that the definitions of "underlying insurance" and "underlying insurer" do not expand so far as to include the Progressive policy.  Necessarily then, the CGL Policy is the "applicable 'underlying insurance' shown in the Schedule of Underlying Insurance" and nothing in the Umbrella Policy "otherwise direct[s]" a different result.  Applying the plain language of the follow form endorsement, the court concludes that the coverage available under the Umbrella Policy is "not broader than that provided by the [CGL Policy]."  *Id.*  It "follow[s] the same provisions, exclusions, and limitations," including the Limitation of Coverage to Designated Activities endorsement.

For this additional reason, Plaintiff is entitled to judgment as a matter of law on its request for a declaration that there is no coverage available to the Murdaugh Defendants based on the

---

[18] The preceding phrase "the applicable" references the fact that there are ten (10) different slots on the Schedule of Underlying Insurance.  [ECF No. 1-3, Schedule of Underlying Insurance.]  There are slots for Employers' liability, Commercial Auto Liability, Professional Liability, etc.  And, as applicable here, Commercial General Liability.  *Id.*  Because there is only one Commercial General Liability insurance policy listed in the Schedule and the endorsement states that it is intended to include Commercial General Liability Coverage, the "applicable [*i.e.*, the one of ten potential options] 'underlying insurance' shown in the Schedule of Underlying Insurance" is the CGL Policy.  *Id.* at General Liability Follow Form Endorsement.

allegations in the Underlying Lawsuit. Plaintiff has no duty to defend the Murdaugh Defendants in that action. Having concluded that Plaintiff is entitled to judgment as a matter of law with respect to the Murdaugh Defendants failing to qualify as "insureds" under the two policies and the Underlying Lawsuit failing to allege a bodily injury arising out of private hunting operations, the court declines to reach the parties' arguments on "occurrence" and the two policy exclusions.

## CONCLUSION

For the foregoing reasons, Plaintiff Philadelphia Indemnity Insurance Company's Motion for Summary Judgment [ECF No. 21] is **GRANTED,** and Defendants Richard Alexander Murdaugh and Richard Alexander Murdaugh, Jr.'s Motion for Summary Judgment [ECF No. 34] is **DENIED**. The court **DECLARES** that the policies at issue do not provide coverage and Plaintiff does not owe the Murdaugh Defendants a defense in the Underlying Lawsuit as a matter of law.

**IT IS SO ORDERED.**

/s/ Sherri A. Lydon
United States District Judge

September 21, 2021
Florence, South Carolina

27